UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEPH N., Plaintiff, v. NANCY BERRYHILL, Acting Commissioner, Social Security Administration, Defendant. | ) | C.A. No. 17-375 WES |

**ORDER**

WILLIAM E. SMITH, Chief Judge.

On May 15, 2018, Magistrate Judge Lincoln D. Almond filed a Report and Recommendation ("R&R") (ECF No. 12), recommending that Plaintiff's Motion To Reverse (ECF No. 10) be denied and that Defendant's Motion To Affirm (ECF No. 11) be granted. Having reviewed the R&R and the parties' submissions, and having heard no objections, the Court accepts the R&R and adopts its recommendations and reasoning. Accordingly, the Court DENIES Plaintiff's Motion To Reverse (ECF No. 10) and GRANTS Defendant's Motion To Affirm (ECF No. 11). Final judgment shall enter for Defendant.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date: June 5, 2018

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEPH N. | : | |
| | : | |
| v. | : | C.A. No. 17-00375-WES |
| | : | |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on August 16, 2017 seeking to reverse the Decision of the Commissioner. On March 2, 2018, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF Doc. No. 10). On March 30, 2018, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (ECF Doc. No. 11).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse (ECF Doc. No. 10) be DENIED and that the Commissioner's Motion to Affirm (ECF Doc. No. 11) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on April 7, 2014 alleging disability since November 27, 2013. (Tr. 204-207). The application was denied initially on August 23, 2014 (Tr. 92-105) and on reconsideration on January 9, 2015. (Tr. 125-127). Plaintiff requested an Administrative Hearing. On January 12, 2016, a hearing was held before Administrative Law Judge Berry H. Best (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 58-91). A supplemental hearing was held before the ALJ on May 17, 2016 at which time Plaintiff, represented by counsel, a VE and medical expert ("ME") appeared and testified. (Tr. 36-57). The ALJ issued an unfavorable decision to Plaintiff on June 22, 2016. (Tr. 7-28). The Appeals Council denied Plaintiff's request for review on June 21, 2017. (Tr. 1-5). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's RFC assessment fails to incorporate manipulative limitations related to his diabetic neuropathy and that the ALJ failed to properly assess his credibility.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's findings are supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart,

274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527©. However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as

to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2. Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V. APPLICATION AND ANALYSIS**

**A. The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's degenerative disc disease, degenerative joint disease (left knee and right ankle), diabetes mellitus with neuropathy, and obesity, are "severe" impairments within the meaning of 20 C.F.R.

§404.1520(c). (Tr. 12). He assessed an RFC for a limited range of sedentary work. (Tr. 13). Based on this RFC and testimony from the VE, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work but, at Step 5, that Plaintiff was not disabled because he was capable of performing certain unskilled, sedentary positions available in the economy. (Tr. 21-22).

**B. The ALJ's RFC Assessment**

Plaintiff's initial argument is that the ALJ erred by failing to incorporate manipulative limitations into his RFC finding. Plaintiff contends that his diabetic neuropathy functionally limits his ability to use his hands and feet. He also argues that such a limitation would effectively preclude all sedentary work.

After considering the evidence, the ALJ found that Plaintiff's diabetes mellitus with neuropathy contributed to his functional limitations, but the objective medical evidence did not establish substantial deficits in fine or gross motor skills in the upper and lower extremities. (Tr. 16). The ALJ went on to conclude that Plaintiff could perform sedentary work with restrictions against the operation of foot controls to accommodate his foot pain and the numbness arising from his neuropathy. Id. The ALJ added that no further manipulative restrictions were supported by the evidence. Id. The ALJ additionally determined that while there was evidence of diminished sensation in Plaintiff's lower extremities based on this more recent medical report, the evidence did not show significant progression from his past diabetic foot examinations, and therefore, he still remained capable of a range of sedentary work. (Tr. 17).

Plaintiff claims that the ALJ's RFC finding is flawed because he failed to incorporate Dr. Fuchs' opinion that his neuropathy might affect his ability to engage in fine, manipulative tasks on a repetitive basis. (ECF Doc. No. 10 at p. 11). The ME's testimony was not, however, a definite conclusion, as he stated generally that neuropathy "may affect fine, manipulative tasks" (Tr. 48)

(emphasis added), not that it would affect such tasks. Dr. Fuchs also subsequently qualified his "may" statement by testifying that Plaintiff's May and July 2014 upper extremity examinations were normal, and he did not see any abnormalities in the upper extremity. (Tr. 48). He added that the mere presence of a change on the EMG did not establish objective deficits on physical examination. Id. As such, Dr. Fuchs did not provide a definitive opinion regarding Plaintiff's manipulative functioning and thus Plaintiff has shown no error by the ALJ in his evaluation of Dr. Fuchs' testimony. Moreover, Plaintiff's counsel did not refute Dr. Fuchs' conclusion at the hearing that there were no abnormalities in Plaintiff's May and July 2014 examinations, even after he asked the attorney to refer him to evidence of upper extremity abnormalities. Id.

Plaintiff also challenges Dr. Fuchs' conclusion that his May and July 2014 physical examinations were inconsistent with the results of his November 2015 EMG. (ECF Doc. No. 10 at p. 11). Plaintiff contends that the ME did not rely on reports contemporaneous to the EMG, and more recent examination findings showed that he reported pins and needles sensation in his hands and his Tinel's sign was positive at the wrist. Id. at p. 11 citing Tr. 895-896. Plaintiff, however, fails to identify competent evidence establishing any greater limitations to his RFC. First, Plaintiff is citing his subjective reports from his November 2015 examination, not objective findings. (Tr. 895-896). Second, the positive Tinel's sign may confirm a carpel tunnel diagnosis but that does not establish by itself either a severe impairment or additional functional restrictions.

Plaintiff further argues that the ALJ erred by not including any manipulative limitations in the RFC finding, contending that the ALJ was required to make such a finding since he found that Plaintiff's diabetes mellitus with neuropathy was a severe impairment. (ECF Doc. No. 10 at p. 11). However, the mere fact that an impairment may be "severe" for purposes of Step 2 does not require a finding that the impairment significantly restricts his ability to perform work, i.e., his RFC. See

Viveiros v. Astrue, No. 10-11405 (JGD), 2012 WL 603578, *12 (D. Mass. Feb. 23, 2012) (collecting cases). Further, Plaintiff fails to cite any evidence beyond his own subjective testimony that demonstrates that he is subject to manipulative limitations. (See ECF Doc. No. 10 at p. 11).

Finally, Plaintiff asserts that the ALJ found that his diabetic neuropathy did not contribute to his functional limitations. Id. The ALJ actually found the opposite, however, as he concluded that Plaintiff's neuropathy did contribute to his functional deficits, but the objective evidence did not establish substantial deficits in his fine or gross motor skills in his upper or lower extremities. (Tr. 16). Further, the ALJ imposed restrictions in his RFC findings due to Plaintiff's neuropathy, as he limited him to sedentary work with no operation of foot controls due to his "foot pain and numbness arising from diabetic neuropathy." (Tr. 13, 16). In the end, Plaintiff has not shown any reversible error as to the ALJ's interpretation and evaluation of Dr. Fuchs' medical opinion testimony or his RFC assessment. The issue presented here is not whether this Court would have reached the same RFC assessment as the ALJ on this record but rather whether the ALJ's assessment is supported by substantial evidence of record. Since it is so supported, it must be affirmed.

**C. The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly evaluated his subjective complaints because the ALJ relied upon Dr. Fuchs' testimony that a finding of stocking glove pattern of decreased sensation raised a question about the patient's veracity. (ECF Doc. No. 10 at p. 12). In essence, Plaintiff appears to be faulting the ALJ for not crediting his testimony regarding his diabetic neuropathy and the resulting foot limitations. Id. at pp. 12-14. Plaintiff, however, fails to show how he has been harmed by this claimed error.

As discussed above, the ALJ found that Plaintiff's diabetes mellitus with neuropathy was a severe impairment (Tr. 12), and imposed restrictions on his RFC due to this condition, as he limited

him to sedentary work that did not require the operation of foot controls. (Tr. 13, 16). While Plaintiff has referenced evidence of sensory loss, he fails to establish how these findings establish greater limitations to his RFC. (ECF Doc. No. 10 at pp. 12-14). As Plaintiff bears the burden of establishing his RFC and he failed to demonstrate more restrictive limitations than imposed by the ALJ, he has failed to demonstrate any error by the ALJ.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF Doc. No. 10) be DENIED and that Defendant's Motion to Affirm (ECF Doc. No. 11) be GRANTED. I further recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 15, 2018